# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 2:07CR00003-004 |
| ) | |
| v. ) | **OPINION** |
| ) | |
| JOSE SANTIAGO, ) | By: James P. Jones |
| ) | United States District Judge |
| Defendant. ) | |

*Jennifer R. Bockhorst, Assistant United States Attorney, Abingdon, Virginia, for United States; Jose Santiago, Pro Se Defendant.*

The defendant, a federal inmate, brings this Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C.A. § 2255 (West Supp. 2010), arguing various claims of court error and ineffective assistance of counsel. Upon review of the record, I find that the defendant's motion must be denied.

I

A grand jury of this court returned a two-count Indictment on February 22, 2007, charging Yayah Talib, James Dawson, Catherine Marie Flading, and Jose Santiago with conspiracy to possess with intent to distribute and to distribute heroin, in violation of 21 U.S.C.A. §§ 841(b)(1)(C) and 846 (West Supp. 2010) (Count One) and conspiracy to provide and possess contraband (heroin) in a prison, in violation

of 18 U.S.C.A. § 371 (West 2000) (Count Two). Talib, Dawson and Santiago were inmates at the United States Penitentiary Lee County ("USP Lee") and Ms. Flading smuggled heroin into the prison for her codefendants to distribute to other inmates.

Flading reached a plea bargain with the government and on February 22, 2007, pleaded guilty pursuant to a written Plea Agreement. Trial for the other defendants was continued on a defense motion. In May 2007, Talib's attorney moved to withdraw, and the court granted that motion and allowed Talib to proceed pro se, with standby counsel appointed to assist him as desired. On June 7, 2007, Santiago's counsel filed a motion to sever, over Santiago's objections, arguing among other things, that Santiago would be prejudiced by the fact that Talib was defending himself. Counsel withdrew this motion on June 11, 2007.

After Dawson and Santiago notified the court in August 2007 that they intended to plead guilty, the trial was continued again. Dawson pleaded guilty without a written plea agreement on August 30, 2007. When Santiago appeared before the court on that date, however, he stated that he did not wish to plead guilty. Santiago and Talib were tried before a jury in early November 2007 and found guilty on both counts. I sentenced Santiago to 262 months imprisonment, to run consecutive to his prior federal criminal sentence.

Santiago appealed and the United States Court of Appeals for the Fourth Circuit affirmed his convictions and sentence. *United States v. Talib*, 347 F. App'x 934 (2009) (unpublished).

In his timely § 2255 motion, Santiago alleges the following grounds for relief: (1) counsel was ineffective in failing to file a motion for severance; (2) counsel was ineffective in failing to obtain a forensic voice expert to testify that the voice heard in tape recordings of telephone conversations did not belong to Santiago; (3) the court erred in admitting the audio tape recordings without a proper foundation; and (4) the court erred in "allow[ing] a witness to testify to the authentication of the voice on the tape when there was no comparison ever made." (ECF 447-1, p. 12.)

The government filed a Response, which has been docketed as a Motion to Dismiss, arguing that these claims are without merit and/or procedurally defaulted. In his reply, Santiago alters Claim 1, asserting that counsel erred in failing to renew the motion to sever once the prejudicial nature of Talib's self-representation became evident during the trial itself. Santiago also added two new claims: (5) counsel was ineffective in failing to challenge the admissibility of altered recordings of telephone

conversations and certain inaccurate testimony about the calls; and (6) the court erred in failing to sever Santiago's case from Talib's case on the court's own motion.[1]

II

A. PROCEDURAL DEFAULT.

A collateral attack under § 2255 may not substitute for an appeal. Claims regarding trial errors that could have been, but were not, raised on direct appeal are barred from review under § 2255, unless the defendant shows cause for the default and actual prejudice resulting from such errors or demonstrates that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack because he is likely actually innocent of criminal conduct. *See United States v. Mikalajunas*, 186 F.3d 490, 492-93 (4th Cir. 1999) (citing *United States v. Frady*, 456 U.S. 152, 167-68 (1982)). A defendant can show cause by demonstrating that counsel's actions in response to such trial errors violated the defendant's constitutional right to effective assistance. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

---

[1] Santiago added Claims 5 and 6 to his § 2255 motion more than one year after his conviction became final. *See* § 2255(f)(1); *Mayle v. Felix*, 545 U.S. 644, 664 (2005). Because I find that the claims are without merit, however, I will not dismiss the claims as an untimely amendment.

On appeal, Santiago could have raised Claims 3, 4, and 6, alleging court error regarding severance and the telephone call recordings. He failed to do so, however. Therefore, they are procedurally barred from review under § 2255 absent a showing of cause and prejudice or actual innocence.

As cause to excuse the default, Santiago asserts ineffective assistance of counsel. For the reasons stated below, however, he fails to demonstrate that counsel's alleged errors rose to the level of a constitutional violation under *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Therefore, he fails to demonstrate cause for his default. As he also makes no colorable claim of actual innocence,[2] I must dismiss Claims 3, 4, and 6 as procedurally barred.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL.

To prove that counsel's representation was so defective as to require reversal of the conviction or sentence, a defendant must meet a two-prong standard, showing that counsel's defective performance resulted in prejudice. *Strickland*, 466 U.S. at 687. First, the defendant must show that "counsel's representation fell below an objective standard of reasonableness," considering the circumstances as they existed

---

[2] To show actual innocence sufficient to excuse procedural default, a petitioner must show that "it is more likely than not that no reasonable juror would have convicted him" of the underlying crime if jurors had received specific, reliable evidence not presented at trial. *Bousley v. United States*, 523 U.S. 614, 623 (1998). Santiago makes no such showing.

at the time of the representation. *Id.* at 687-88. The defendant must overcome a strong presumption that counsel's performance was within the range of competence demanded from attorneys defending criminal cases. *Id.* at 689.

Second, to show prejudice, the defendant must demonstrate a "reasonable probability" that but for counsel's errors, the outcome would have been different. *Id.* at 694-95. If it is clear that the defendant has not satisfied one prong of the *Strickland* test, the court need not inquire whether he has satisfied the other prong. *Id.* at 697. In a § 2255 motion, the defendant bears the burden of proving his claims by a preponderance of the evidence. *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958).

1. Motion to Sever.

Santiago alleges that in the early stages of trial preparation, he objected to severance because he did not believe that any of the codefendants could implicate him in the alleged conspiracy, since they did not know him. After two of the codefendants pleaded guilty (Flading and Dawson) and Talib was allowed to represent himself at trial, Santiago allegedly asked counsel to renew the motion to sever, because he feared spill over of the overwhelming evidence of Talib's guilt and Talib's inept self-representation would influence the jury to convict them both. Counsel failed to do so. Santiago asserts that he suffered "extreme prejudice" from being tried with Talib.

Santiago fails to satisfy his burden to prove that counsel's failure to renew the motion to sever resulted in prejudice as defined in *Strickland*. On appeal, the Fourth Circuit reviewed Santiago's claim of insufficiency of the evidence and found it to be without merit. *Talib*, 347 F. App'x at 941.[3] Santiago does not point to any specific piece of incriminating evidence that would not have been presented against him at a single-defendant trial. Nor does he demonstrate that any particular question or comment that Talib made in the joint trial increased the likelihood of his conviction. As he thus fails to demonstrate any reasonable probability that severance would have resulted in a different outcome, his claim fails under the prejudice prong of *Strickland*, and I will deny relief accordingly.

2. Telephone Conversation Recordings.

All telephone calls to and from prisoners at USP Lee are digitally recorded. At trial, through the testimony of Bryant Kilgore, a prison investigator, the government authenticated and then played an audio compact disc ("CD") to which Kilgore had transfered several recordings of telephone conversations between Talib

---

[3] In his response to the government's motion, Santiago argues at length that the government's evidence was insufficient to link him to the conspiracy. To the extent that he seeks to raise an insufficiency claim in this § 2255 action, it fails. This court is bound by the Fourth Circuit's ruling on appeal that Santiago's insufficiency claim was without merit. *See. Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976) (claims fully considered on direct appeal cannot be reconsidered in a § 2255 action).

and Flading, between Dawson and Flading, and between a woman in New York named Iris Rivera and a prisoner caller using Santiago's telephone access code.[4]

During one call, Santiago asked Rivera to send his girl a birthday card and a teddy bear. During discussions in later calls, Santiago also mentioned money along with the bear and the card. The government argued that terms used in these discussions were coded messages directing Rivera to procure and hide drugs inside a stuffed animal. In other calls, Dawson asked Flading if she had talked to Iris yet. In an August 29, 2007 recorded call, Santiago asked Rivera about the package, and she confirmed that she had $4.05 in mailing costs to send it. A package addressed from Sonya Iris Melendez in New York to Flading arrived at a Kingsport, Tennessee, post office on August 31, 2007. It indicated a mailing cost of $4.05 and contained a stuffed elephant with heroin secreted in its tail.

Kilgore testified that he had listened to dozens of calls made to and from Santiago's telephone access code, that he had spoken to Santiago in person on at least one occasion, and that Santiago's voice sounded like the person on the calls. Santiago asserts in Claim 2 that counsel should have procured a voice specialist to use an instrument called a "spectrograph" to compare the voice on the tapes to Santiago's voice and then testify that the voice on the recordings was not Santiago.

---

[4] The evidence also indicated that Rivera visited Santiago at the prison.

Santiago has not met his burden of proof as to this claim. First, he admits that he never told counsel before trial that he had not participated in the recorded calls. Without some indication that voice identification technology might be favorable to the defense, counsel's decision to pursue other avenues of investigation instead was reasonable. Second, Santiago offers no evidence that a spectrograph comparison of his voice to the voice on the recordings would indicate that the recorded voice was not his. In short, he fails to demonstrate any reasonable probability that presenting testimony from a spectrograph expert would have resulted in a different outcome at trial. This aspect of his claim thus fails under both prongs of *Strickland*.

In Claim 5, Santiago asserts that counsel told him before trial, and should have argued at trial, that the recordings of the telephone conversations were inadmissible because they had been altered from their original analog format to a digital recording and then transferred to a CD and could have been edited in the process. He asserts that when he heard the recordings played during trial, he told counsel that some of them "sounded edited, because he could hear his own voice saying certain things that he had no recollection of ever having said over the phone to anyone." (Def.'s. Resp. 4.)

The theory that the recordings were inadmissible because they had been altered fails for lack of evidence. Kilgore testified that the prison's equipment makes digital

recordings of telephone calls, which are then maintained on a server for six months unless saved for an investigation. He further testified that he merely transferred the digital recordings from the prison's equipment to a CD for use at trial. Other than Santiago's own speculation that the CD had somehow been edited to make someone else sound like him, he offers no viable evidence on which counsel could have argued that the recordings on the CD had been edited or were otherwise not accurate representations of the calls recorded by the prison's equipment. Thus, to the extent that Santiago asserts counsel's deficient performance in failing to raise such an objection, his claim fails under *Strickland*.

Santiago's claim that counsel misadvised him before trial that the tapes would be inadmissible on this ground also fails under the prejudice prong of *Strickland*. Santiago alleges that if he had known before trial that the tapes would be admitted against him, he would have asked for a voice analysis. As already discussed, he fails to demonstrate that this tactic would have resulted in any favorable evidence whatsoever. Accordingly, he does not make the necessary showing that absent counsel's alleged misadvice about the tapes, the outcome at trial would have been different.

Finally, in Claim 5, Santiago asserts that counsel should have objected when Kilgore testified falsely on direct examination that the telephone number Talib gave

Flading for "Iris" was the same number that Santiago had on his telephone list for Iris Rivera. Santiago claims that the phone number Talib gave Flading belonged to a person named Sonia Iris Melendez, who had a different address and phone number than Iris Rivera.

Santiago fails to give a transcript page number where Kilgore's allegedly inaccurate testimony appears, and I do not find any such testimony in Kilgore's direct examination. Rather, the record reflects that the government used Kilgore to introduce prison documents as exhibits, including the lists of approved telephone numbers for Santiago and Dawson, and visitor approval sheets and visit declarations for Flading and Rivera, which included address and telephone number. Certainly, counsel cannot be found deficient for failing to object to alleged testimony that did not occur.

In any event, I cannot find that Santiago could prove prejudice from such comments by Kilgore if they existed, in light of the other evidence of Santiago's involvement in the conspiracy. The participants of the conspiracy routinely used code names for things and people. Flading testified that Talib gave her a telephone number for Iris and that Dawson told her Iris would be sending her a package identical to the one that Santiago told Iris to send to his "girl." The package that Flading received from "Sonia" bore the same amount of postage that Iris had reported to Santiago and

contained nearly identical items. Thus, Santiago fails to demonstrate any reasonable probability that but for counsel's alleged error here, the outcome would have been different.

III

Upon review of the record, I conclude that the § 2255 motion must be denied. For the stated reasons, the defendant's claims are either procedurally barred or without merit. Therefore, I will grant the government's Motion to Dismiss.

A separate Final Order will be entered herewith.

ENTER: April 18, 2011

/s/ JAMES P. JONES
United States District Judge